UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

**CIVIL ACTION NO. 11-294-JBC**

**LISA LYNN HENSLEY,**                                                            **PLAINTIFF,**

**V.**                 **<u>MEMORANDUM OPINION AND ORDER</u>**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**                         **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \* \* \*\*

      This matter is before the court on cross-motions for summary judgment on Lisa Lynn Hensley's appeal from the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The Court will grant Hensley's motion, R. 10, and deny the Commissioner's motion, R. 11, because substantial evidence does not support the administrative decision.

      At her alleged disability onset date, Hensley was a 43-year-old woman with a high school education and past relevant work as a group leader, bank teller, and sales clerk. AR 57-59, 84. She alleged disability beginning February 3, 2006, due to thyroid problems, "loss of voice," back pain, carpal tunnel syndrome, depression, lack of energy, left knee problems, and "multiple tumors." AR 188. Her date last insured ("DLI") was December 31, 2008, AR 26; Hensley was thus required to show disability between her alleged onset date and her DLI in order to be entitled to benefits. She filed her application on January 2, 2010, and after several administrative denials and appeals, Administrative Law Judge ("ALJ")

William C. Zuber issued a decision determining that Hensley was not disabled. AR 26-33.  Under the traditional five-step analysis at 20 C.F.R. § 404.1520, the ALJ found that Hensley had not engaged in substantial gainful activity between February 3, 2006, the alleged onset date, and December 31, 2008; that she had "severe" impairments during the relevant period consisting of a goiter, a history of bilateral carpal tunnel syndrome, a left knee cyst, depression, and anxiety; that her impairments, whether considered singly or in combination, did not meet or equal one of the Commissioner's Listings of Impairment; that she retained the residual functional capacity ("RFC") to perform a range of routine, unskilled "light" work as long as it did not require sitting or standing more than 30 to 45 minutes continuously, no more than frequent use of the upper extremities for manipulation, no more than occasional contact with the general public, and no exposure to extremes of temperature or humidity; and that, based on her RFC and the testimony of a vocational expert ("VE"), a significant number of unskilled jobs existed in the economy which Hensley could perform. AR 28-32.  The ALJ thus denied Hensley's claim of disability on September 9, 2010. AR 33.  The Appeals Council declined to review, AR 1-3, and this action followed.

Hensley's issues on appeal are: (1) that the ALJ improperly rejected the opinions of her treating physicians, failed to seek an opinion from a medical expert, and substituted his own opinion; and (2) that the ALJ violated the provisions of Social Security Ruling ("SSR") 00-4p which required him to ask the VE whether there was a conflict between the VE's testimony and The Dictionary of

Occupational Titles ("DOT").

The ALJ did not err in rejecting the opinion of Hensley's treating physician, Dr. Jerry Woolum. Dr. Woolum did not provide an opinion on Hensley's functional restrictions until February 15, 2010, more than a year after the DLI. AR 674-75. In August 2010, Dr. Woolum signed an affidavit stating that his previous restrictions were the same ones Hensley would have had before December 1, 2008. AR 679. The ALJ rejected Dr. Woolum's restrictions because he found they were not consistent with the physician's own treatment records. AR 31.

Dr. Woolum's handwriting on his RFC assessment is almost illegible, and he also filled out the form improperly by failing to record a maximum weight which Hensley could lift, instead saying that she could lift a maximum of "1/3" occasionally and "1/3" frequently. AR 674. His meaning is unclear. He appears to write that she could stand one hour in an eight-hour day and sit four hours. AR 674-75. He clearly listed restrictions to "occasionally" climb, balance, stoop, crouch, kneel, and crawl, and indicated the presence of restrictions on reaching, handling, feeling, pushing, pulling, and working in the presence of temperature extremes, chemicals, dust, fumes, and humidity. AR 675. The conditions causing these restrictions are not entirely clear, but the problems Dr. Woolums legibly refers to are Hensley's back pain, chronic obstructive pulmonary disease (COPD), and hypocalcaemia. AR 674.

Dr. Woolum's office notes from the relevant period show that he diagnosed Hensley as being hypothyroid in 2006 and prescribed only medication. AR 556. By

January 2008, Hensley complained that her thyroid was enlarging and had become much more symptomatic and that she was now having difficulty swallowing. AR 554.  Dr. Woolum noted that he had discussed a total thyroidectomy with Hensley "on many occasions," and she planned to have the procedure in the near future. *Id.* However, she did not mention having the procedure on her next office visit in April 2008, although her thyroid was still markedly enlarged and tender. Her primary complaint was sinusitis.  AR 553. Hensley did not return to Dr. Woolum's office until September 30, 2009, approximately 15 months later, and 10 months after the DLI. AR 553. Her complaints were that her goiter was becoming larger, that she was having heart palpitations and left-arm pain, and occasional mid-back pain. AR 553. On October 15, 2009, Dr. Woolum reported that Hensley had a negative stress test and chest x-ray, and "some" cervical spine disease, while an ultrasound showed no nodules on the thyroid but that it was definitely enlarging. *Id.* He recommended a colonoscopy before addressing the thyroid problem. *Id.* After the colonoscopy, which showed only benign polyps, Dr. Woolum performed a total thyroidectomy on November 11, 2009. AR 527-34.  His follow-up notes describe Hensley's difficulty with hoarseness following the procedure in late 2009 and 2010; in the summer of 2010 he referred Hensley to speech therapy for the problem. AR 549-50, 604-05, 669. His last office note, from May 31, 2010, states that Hensley had hoarseness, but added, "I think that, with time, this will certainly improve." AR 669.  The office notes provide no support for Dr. Woolum's

restrictions even after the DLI, much less for the relevant period before December 31, 2008.

Hensley suggests that Dr. Woolum's restrictions were uncontradicted by any medical source and that the ALJ should have sought another opinion from a medical expert. However, an ALJ's decision may be supported by reliance on substantial evidence in the record as a whole, despite an ALJ's failure to cite a summary provided by a treating physician. *See Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535-36 (6th Cir. 2001). Moreover, a state agency physician, Dr. Amanda Lange, reviewed the evidence as of March 5, 2010, at the reconsideration level, and indicated that Hensley was not disabled, AR 95, providing medical support for the ALJ's rejection of Dr. Woolum's limitations. Accordingly, the ALJ did not err in discounting the opinion of Dr. Woolum.

However, the ALJ committed reversible error in failing to determine whether there was a conflict between the VE's testimony and the DOT. SSR 00-4p, 2000 WL 1898704 at *4, places an affirmative duty on the ALJ to ask the VE whether her testimony conflicts with the job descriptions in the DOT. *See Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 603 (6th Cir. 2009). If the VE's evidence appears to conflict with the DOT, the ALJ must obtain a reasonable explanation. *Id.* Failure to inquire about discrepancies with the DOT is not harmless error where the ALJ has determined that the claimant is capable only of unskilled work, but many of the positions encompassed by the VE's testimony have a specific vocational preparation ("SVP") level greater than one or two, which are classified as

"unskilled." *See Poe v. Barnhart*, No. 5:05-48-JBC, 2006 WL 6908092 (E.D. Ky. Mar. 29, 2006). In the instant case, the ALJ specifically limited Hensley to unskilled work. AR 85. The two jobs identified by the VE, office clerk and inspector/tester/sorter, AR 85-86, have many possible counterparts in the DOT, at least some of which require an SVP of more than 2. For example, DOT 209.562.010, "general clerk" or "routine office clerk," has an SVP of 3. DOT 759.684.074, "rubber-goods inspector-tester," has an SVP of 4. SVPs of 3 and 4 correspond to "semi-skilled" work. SSR 00-4p at *3. As the VE's testimony thus may have conflicted with the DOT, the ALJ's failure to inquire about possible discrepancies with the DOT is not harmless error, and the ALJ's conclusions based on the VE's testimony are not supported by substantial evidence.

Accordingly,

**IT IS ORDERED** that Hensley's motion for summary judgment, R. 10, is **GRANTED** in part and **DENIED** in part; the case is **REMANDED** to the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R. 11, is **DENIED**.

The court will enter a separate judgment.

Signed on January 7, 2013

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY